# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOSE USIEL GARCIA-ANDRADE;<br>RIGOBERTO GONZALEZ,<br><br>Defendants. | CASE NO. 13-CR-993-IEG<br>**ORDER:**<br>**(1) GRANTING MOTION TO DISMISS INDICTMENT [Doc. No. 25];**<br>**(2) GRANTING MOTION FOR JOINDER IN CO-DEFENDANT'S MOTIONS [Doc. No. 26];**<br>**(3) GRANTING MOTION TO FILE AMICUS BRIEF [Doc. No. 36];**<br>**and**<br>**(4) DENYING MOTION TO STRIKE MOTION TO FILE AMICUS BRIEF [Doc. No. 37].** |

Presently before the Court are the motions of Defendant Rigoberto Gonzalez ("Defendant Gonzalez") to dismiss the indictment [Doc. No. 25, Def.'s Mot.] and Defendant Jose Usiel Garcia-Andrade ("Defendant Garcia-Andrade") for joinder in Defendant Gonzalez's motion. [Doc. No. 26.] For the following reasons, the Court **GRANTS** both motions.

## PROCEDURAL BACKGROUND

On December 21, 2013, Defendants Gonzalez and Garcia-Andrade were arrested on or near a vessel that contained approximately 5,500 kilograms of

marijuana near Long Beach, California, and were taken into state custody. [Doc. No. 25-1, Def.'s Mot. at 1.] After state authorities declined to prosecute, Defendant Garcia-Andrade was transferred to federal custody on December 26, 2013 and charged with illegal reentry. [Id.; see Case No. 13cr316-IEG.] On January 24, 2013, the Government filed an information charging Defendant Garcia-Andrade with a violation of 8 U.S.C. § 1326(a) (Removed Alien Found in the United States). [Doc. No. 25-1, Def.'s Mot. at 1-2.] Defendant Garcia-Andrade pleaded guilty, and this Court sentenced him to time served in custody on March 21, 2013. [Id. at 2.]

On March 19, 2013, the Government filed a sealed indictment charging Defendants Garcia-Andrade and Gonzalez with a violation of 21 U.S.C. §§ 841(a)(1) and 846 (Conspiracy to Distribute Marijuana). [Id. at 2; Doc. No. 1, Indictment.] Both Defendants pleaded not guilty on March 20, 2013. [Doc. Nos. 7, 9.]

On May 25, 2013, Defendant Garcia-Andrade filed the present motion to dismiss the indictment based on Assistant U.S. Attorney Jaime Parks's ("Ms. Parks") bar status. [Doc. No. 25, Def's Mot.] On May 27, Defendant Gonzalez filed the present motion for joinder in Defendant Garcia-Andrade's motion. [Doc. No. 26.] The Government opposed the motion, but focused only on the underlying facts regarding Ms. Parks's bar status. [Doc. No. 32, Govt.'s Opp.] The Government failed to address Defendants' legal arguments regarding whether a dismissal of the indictment is warranted, and also failed to provide a declaration from Ms. Parks or anyone else. [See id.] The Government also failed to attach several documents referenced in their opposition brief including communications between Ms. Parks and the Virginia State Bar. [See id.] Subsequently, each Defendant filed a reply brief. [Doc. No. 34, Def. Gonzalez's Reply; Doc. No. 35, Def. Garcia-Andrade's Reply.]

On June 24, one day prior to oral argument on the present motion to dismiss

the indictment, some members of the Criminal Justice Act Panel for the Southern District of California ("CJA Panel") and others filed a motion for leave to file an amicus brief, and attached their brief to the motion. [Doc. No. 36, <u>Mot. to file Amicus Brief.</u>] The Government moved to strike the amicus brief. [Doc. No. 37, <u>Govt.'s Mot. to Strike.</u>][1]

The Court held oral argument on the motion on June 25, 2013. [Doc. No. 39.] At oral argument, Defendants provided to the Court documents obtained by subpoena from the Virginia State Bar regarding Ms. Parks's bar status.

On July 8, 2013, Defendant Gonzalez filed a supplemental reply brief. [Doc. No. 40, <u>Def.'s Supp. Reply.</u>] Also on July 8, the Government filed a declaration from Ms. Parks. [Doc. No. 41, <u>Parks Decl.</u>]

## FACTUAL BACKGROUND

The following facts regarding Ms. Parks's bar status are relevant to the motion before the Court. Both the Government and Defendants agree that Ms. Parks transferred her California bar membership from active to inactive status on February 1, 2013. [Doc. No. 32, <u>Govt.'s Opp.</u>; Doc. No. 25-1, <u>Def.'s Mot.</u> at 2.]

However, the Government and Defendants disagree about the time line regarding Ms. Parks's Virginia bar status. Defendants argue that Ms. Parks became an active member of the Virginia State Bar on May 7, 2013. [<u>Id.</u>] Defendants contend that therefore, Ms. Parks was not actively licensed to practice law in March of 2013, at the time of the grand jury proceedings. [<u>Id.</u>]

The Government, on the other hand, argues that Ms. Parks effectively transferred her Virginia bar membership from inactive, or associate status, to active status on February 1, 2013, which is the same day she became an inactive member of the California bar. [Doc. No. 32, <u>Govt.'s Opp.</u> at 3.] To support its argument,

---

[1] The Court **GRANTS** the motion for leave to file an amicus brief. The Court **DENIES** the Government's motion to strike the amicus brief. The Court notes that it did not rely on the amicus brief when reaching a decision on the motion to dismiss the indictment.

1  the Government cites a letter from Gale Cartwright ("Ms. Cartwright"), Director of
2  Member Compliance for the Virginia State Bar states that Ms. Parks's active
3  membership was effective on February 1, 2013.  [Doc. No. 32-2, Ex. B, May 29
4  Letter from Cartwright; Doc. No. 32, Govt.'s Opp. at 3.]  This letter is dated May
5  29, 2013, and specifically states:  "Pursuant to your [Ms. Parks's] request, your
6  active membership was effective on February 1, 2013."
7       At oral argument, the Government, through Assistant U.S. Attorney Todd
8  Robinson ("Mr. Robinson"), presented a muddled and contradictory time line
9  regarding Ms. Parks's knowledge of her bar status in Virginia.  When confronted
10 with documents obtained by subpoena from the Virginia State Bar, Mr. Robinson
11 stated that this was the first time he had seen them.
12      From the documents obtained by subpoena from the Virginia State bar,
13 submitted by Defendants as Exhibit A to their supplemental brief [Doc. No. 40-1,
14 Ex. A] the Court constructs the following time line of events regarding Ms. Parks's
15 bar status.  On January 23, 2013, Ms. Parks wrote a letter to the Virginia State Bar
16 asking to change her status from associate to active, and requesting that the change
17 take place on or before February 1, 2013.  [Doc. No. 40-1, Ex. A, Jan. 23 Letter
18 from Parks at 3.]  In the letter, Ms. Parks wrote that she enclosed proof of her CLE
19 requirements and a check for $137.50.  [Id.]
20      On January 29, 2013, the Virginia State Bar sent Ms. Parks a form letter
21 stating that she had to complete 4 CLE hours "before eligibility to change to Active
22 membership."  [Doc. No. 40-1, Ex. A, Jan. 29 Letter from Cartwright at 27.]  In
23 other words, this letter stated that Ms. Parks was not yet an active member of the
24 Virginia State Bar.  The letter also acknowledged receipt of a certification of
25 attendance for CLE credit but stated that the course was not approved for credit in
26 Virginia.  [Id. at 28.]  The letter informed Ms. Parks that she would have to
27 complete an Application for CLE Course Approval in order to receive credit for the
28 course, and that the processing would take four to six weeks.  [Id.]

1    On April 17, 2013, the Virginia State Bar sent Ms. Parks a subsequent letter, which stated that as of the date of this letter, Ms. Parks still had not completed the CLE requirements to become active, and that she was still listed as an associate member, who "<u>cannot</u> practice Virginia law." [Doc. No. 40-1, Ex. A, Apr. 17 Letter from Cartwright at 31 (emphasis in original).] This letter demonstrates that Ms. Parks was not an active member of the Virginia State Bar as of April 17, 2013.

On May 10, 2013, the Virginia State Bar sent a letter to Ms. Parks verifying her change in membership status. The letter stated: "Pursuant to your request, your active membership was effective on *May 7, 2013*." [Doc. No. 40-1, Ex. A, May 10 Letter from VA State Bar at 35 (emphasis added).]

On May 21, 2013, defense counsel for both Defendants sent Ms. Parks a letter indicating that it had come to their attention that Ms. Parks may not have been actively licensed to practice law at the time the indictment was filed against Defendants. [Doc. No. 25-2, Ex. B, May 21 Letter from Kimpel and Sullivan at 6.] The letter informed Ms. Parks that Defendants intended to file a motion to dismiss the indictment on this basis. The letter also stated that Defendants had "no wish to file this motion" if Ms. Parks was in fact an active member of a state bar, and asked Ms. Parks inform defense counsel know if she was. [<u>Id.</u>] Ms. Holly Sullivan, counsel for Defendant Gonzalez then emailed Ms. Parks stating that she called the Virginia State Bar herself, who informed her that Ms. Parks changed her status from active to inactive on May 7, 2013. [Doc. No. 25-2, Ex. D, May 21 Email from Sullivan at 10.]

Also on May 21, 2013, Ms. Maria Marcucilli, a licensed private investigator, called Ms. Cartwright on May 21, 2013. Ms. Cartwright stated that Ms. Parks called the membership department to request a review of her file. [Doc. No. 27-1, <u>Marcucilli Decl.</u> ¶ 10.] Ms. Cartwright subsequently sent a letter to Ms. Parks on May 21 which stated: "After a review of your record I find that you [sic] license should have been changed on 2/19/2013. You previously submitted certifications of

attendance for courses that were not pre-approved however the applications were received on 2/19/2013 and our practice is to immediately process applications when we have certifications in hand to meet the requirements for status change requests. You [sic] effective date of active status in Virginia is 2/19/13." [Doc. No. 40-1, Ex. A, May 21 Email from Cartwright.]

On May 24, 2013, Ms. Parks responded to defense counsel's May 21 letter and stated that she converted her status from an inactive member to an to an active member "well-before [sic] the indictment was returned . . . on March 19, 2013." [Doc. No. 25-2, Ex. C, May 21 Letter from Parks at 8.]

Also on May 24, 2013, Ms. Parks sent a letter to Ms. Cartwright to again reconsider the effective date of her active status. Her first sentence in the letter stated that she was "writing to respectfully request reconsideration of [her] conversion date from associate to active member . . . ." [Doc. No. 40-1, Ex. A, May 24 Letter from Parks at 43.] She also wrote that she "sent requests to both bar associations [California and Virginia] with an effective date of February 1, 2013, intending to maintain an active bar status with no lapse." [Id.]

In the letter, Ms. Parks acknowledged that on January 29, 2013, the Virginia State Bar sent her a letter advising her that she had not met one of the continuing legal education ("CLE") requirements. [Id.] Ms. Parks explained that she did not know that her live CLE credits had not been pre-approved by the Virginia State Bar. [Id.] In response to the January 29 letter, Ms. Parks stated that she contacted Westlaw LegalEdCenter ("Westlaw") to resolve the situation regarding approval of her CLE course. [Id.] She also stated that she did not recall whether she contacted the Virginia State Bar at this time. [Id.] Ms. Parks then stated that Westlaw did not apply for course approval until February 19, 2013. [Id. at 44.]

Ms. Parks then presented a litany of excuses as to why she did not follow up with the Virginia State Bar. She stated that she "kept the [January 29 Virginia State Bar] notice on [her] desk to remind [her]" but "allowed other work-related tasks to

take priority." [Id. at 44.] In essence, Ms. Parks stated that she was too busy practicing law to secure her admission to practice, even though the Virginia State Bar explicitly notified her that she was not an active member.

Ms. Parks then acknowledged in the letter that the April 17 letter from the Virginia State Bar again "advised [her] that [she] was associate, not active status . . . ." [Id.] In order to complete her annual bar certifications for the Department of Justice, Ms. Parks sent a request to the Virginia State Bar to confirm her bar status. The Virginia State Bar responded with the above May 10, 2013 letter. Finally, Ms. Parks stated that she finally realized there was a problem with her bar status and again contacted the Virginia State Bar when "a letter from opposing counsel alert[ed] [her] to their belief that [she] was not an active member of any bar when [she] presented the indictment to a grand jury in March 2013." [Id. at 45.] She ended the letter by asking the Virginia State Bar to "amend[]" her "conversion date" to active status to February 1, 2013. [Id.]

On May 29, 2013, Ms. Cartwright sent an email to Ms. Parks stating that the Executive Director of the Virginia State Bar, Karen Gould was presented with Ms. Parks's letter for reconsideration of the effective date of her active status. [Doc. No. 40-1, Ex. A, May 29 Letter from Ms. Cartwright at 38.] Ms. Cartwright then informed Ms. Parks that her active status was made effective as of February 1, 2013. [Id.]

On May 29, 2013, Debra Isley sent to Ms. Parks a letter from Ms. Cartwright via email to verify the change in status to active with an effective date of February 1, 2013. [Doc. No. 40-1, Ex. A, May 19 Email from Isley at 40.] The attached letter from Ms. Cartwright stated: "Pursuant to your request, your active membership was effective on February 1, 2013." [Doc. No. 40-1, Ex. A, Letter from Cartwright at 41.]

/ / /

/ / /

# DISCUSSION

## I. Motion for Joinder

Co-defendant Jose Usiel Garcia-Andrade ("Defendant Garcia-Andrade") filed a motion for joinder in Defendant Gonzalez's motion. [Doc. No. 26.] The Court **GRANTS** Defendant Garcia-Andrade's motion.

## II. Motion to Dismiss the Indictment for Lack of Jurisdiction

Defendants argue, *inter alia*, that the indictment should be dismissed for a lack of jurisdiction. [Doc. No. 25-1, Def.'s Mot. at 7-9.] Defendants contend that a valid indictment is required to confer jurisdiction upon a district court. [Id.] The Government did not address this jurisdictional argument in its opposition brief. [See Doc. No. 32, Govt.'s Opp.]

"The lack of jurisdiction of the court shall be noticed by the court at any time during the pendency of the proceedings." United States v. Durham, 941 F.2d 886, 892 (9th Cir. 1991). A court does not have jurisdiction over a criminal case unless "a proper representative of the Government" participates in the action. See United States v. Providence Journal Co., 485 U.S. 693, 699, 707-08 (1988) (dismissing previously granted writ of certiorari for lack of jurisdiction in a criminal case where special prosecutor lacked authority to represent United States); United States v. Bennett, 464 Fed. Appx. 183, 184-85 (4th Cir. 2012) ("A federal district court is without jurisdiction in a criminal prosecution where the Government lacks an authorized representative." (citing Providence Journal Co., 485 U.S. at 708); Durham, 941 F.2d at 892 ("In every case addressing the authority of a Special Assistant United States Attorney the jurisdiction of the district court was in question."); United States v. Plesinski, 912 F.3d 1033, 1038 (9th Cir. 1990) (analyzing whether the district court had jurisdiction over a prosecution when the Special Assistant U.S. Attorney was defectively appointed, and therefore unauthorized to participate).

Some courts have found that "a prosecution pursued by a prosecutor without

a proper license is still valid because, although not qualified for her job as a prosecutor, she was nevertheless given the job by the government. This made her a 'de facto officer' whose acts on behalf of the government were valid." <u>Woods v. United States</u>, 2010 WL 4746138, at *1 (M.D.N.C. Nov. 16, 2010); see also <u>Parker v. United States</u>, 2006 WL 2597770, at *13-15 (E.D. Ark. Sept. 8, 2006); <u>United States v. Deaton</u>, 2005 WL 1922877, at *3-4 (E.D. Ark. Aug. 9, 2005). The Court declines to adopt the reasoning of these cases to the present situation as none of these cases considered whether the district court had *jurisdiction* to proceed. In <u>Woods</u>, for example, the petitioner brought claims for relief under 28 U.S.C. § 2255 and alleged a due process violation on the theory that the prosecutor was unlicensed. The <u>Woods</u> court rejected the due process claim on the grounds that there is no constitutional right to a properly licensed prosecutor. Likewise, both <u>Parker</u> nor <u>Deaton</u> reviewed this issue on a § 2255 motion, and neither court addressed jurisdiction. Rather, they focused on prosecutorial misconduct. <u>Parker</u>, 2006 WL 2597770, at *13-15; <u>Deaton</u>, 2005 WL 1922877, at *3-4 ("[P]rosecutors who did not have actual authority to prosecute a defendant were acting as a 'de factor official' and the defendant could not collaterally attack the prosecutor's lack of authority to prosecute.").

These cases found in the situations before them that even if the prosecutor was unlicensed, she was nevertheless a de facto officer of the government. However, being a de facto officer for the purposes of prosecutorial misconduct and due process violations does not equate to being a proper representative of the government for jurisdictional purposes. In fact, the dictionary definition of "de facto" is: (1) "Actual; existing in fact; having effect even though not formally or legally recognized;" (2) "Illegitimate but in effect." <u>Black's Law Dictionary</u> 479 (9th ed. 2009). An officer that is not "legally recognized" or "illegitimate" does not equate to a "proper" representative of the government. Accordingly, the Court declines to extend the aforementioned district courts' line of reasoning to the

context of jurisdiction.

Therefore, the Court must independently determine whether Ms. Parks was a proper representative under Providence Journal Co. in order to answer the question if it retains jurisdiction over this action. To determine whether Ms. Parks was a proper representative of the Government, the Court must analyze whether she was permitted to obtain the indictment against Defendants on March 19, 2013.[2]

"Except as otherwise authorized by law, the conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C.A. § 516 (West). An indictment "must be signed by an attorney for the government." Fed. R. Crim. P. R. 7(c)(1). Federal Rule of Criminal Procedure 1(b)(1) defines "[a]ttorney for the government" as "(A) the Attorney General or an authorized assistant; (B) a United States attorney or an authorized assistant; . . . and any other attorney authorized by law to conduct proceedings under these rules as a prosecutor." Fed. R. Crim. P. 1(b)(1).

By statute, "[a]n attorney for the Government [is] subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a). The Local Rules of Practice for the United States District Court for the Southern District of California ("Local Rules"), more specifically, Civil Local Rule 83.3(c)(3) requires attorneys for the United States to be active members of any state bar.[3] More specifically, Civil Local Rule 83.3(c)(3) provides the following: "An attorney who is not [admitted to the bar of the Southern District of California], but *who is a member in good standing of, and eligible to practice before, the bar of any United States court or of the highest*

---

[2] Mr. Robinson admitted during oral argument that there were no other attorneys working with Ms. Parks on this case.

[3] Local Criminal Rule 1.1(e) specifically states that Local Civil Rule 83.3 on Attorney Admissions applies to all criminal actions and proceedings. Local Crim. R. 1.1(e).

*court of any state* . . . may practice in this court in any matter in which the attorney is employed or retained by the United States or its agencies." Local Civ. R. 83.3(c)(3) (emphasis added). Therefore, in order to be a proper representative of the Government, an Assistant U.S. attorney must be an active member of any bar.

The Virginia State Bar defines "Associate Members" as "[t]hose attorneys who have been admitted to practice law in the courts of this state but who are not presently so engaged . . . ." "Associate members shall be entitled to all the privileges of active members except they may not practice law . . . in the Virginia State Bar." Virginia State Bar Professional Guidelines, Rules and Regulations (3)(b) (emphasis added). Therefore, an Assistant U.S. Attorney who is an associate member of the Virginia State Bar is not eligible to practice in this Court as they are not eligible to practice in the Virginia State Bar. See Local Civ. Rule 83.3(c)(3).

Furthermore, Local Civil Rule 83.3(d) states:

> An attorney who is a member of the bar of this court, or who has been permitted to practice in this court under Civil Local Rule 83.3.c, must promptly notify the court of any change in status in another jurisdiction which would make the attorney ineligible for membership in the bar of this court under Civil Local Rule 83.3.c, or ineligible to practice in this court under Civil Local Rule 83.3.c hereof. *In the event the attorney is no longer eligible to practice in another jurisdiction by reason of* suspension for nonpayment of fees or *enrollment as an inactive member, the attorney will immediately be suspended from practice before this court without any order of court and until the attorney becomes eligible to practice in such other jurisdiction.* Any attorney seeking reinstatement may file a petition with the clerk of court with supporting documentation showing that he or she meets the requirements of 83.3.c.1.a, for determination by the chief judge.

Local Civ. R. 83.3(d) (emphasis added). Therefore, if Ms. Parks was enrolled as an inactive member on or before March 19, 2013, she would automatically be suspended from practice before this Court.

The Court must determine whether Ms. Parks was actively licensed to practice law on March 19, 2013, which is when she obtained the indictment in the present case. From the communications between Ms. Parks and the Virginia State Bar, she requested that her bar status be changed from associate to active on or before February 1, 2013. [Doc. No. 40-1, Ex. A, Jan. 23 Letter from Parks at 3.]

However, the April 17 letter from the Virginia State Bar to Ms. Parks makes clear that as of April 17, Ms. Parks was still an associate member. [Doc. No. 40-1, Ex. A, Apr. 17 Letter from Cartwright.] Therefore, on March 19, 2013, when Ms. Parks obtained the indictment against Defendants, she was an associate member who was not eligible to practice law in this Court.

### A. Nunc Pro Tunc

The Supreme Court makes clear that "[t]he existence of federal jurisdiction depends on the facts as they exist" when an action is initiated. Newman-Green v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989); see also Church of Scientology of Colorado v. United States, 499 F. Supp. 1085, 1088 (D. Colo. 1980) ("Amendment . . . is proper only as to matters of 'form' in stating jurisdictional allegations, *not of 'substance' in creating these facts to confer jurisdiction nunc pro tunc.*" (emphasis added)).

Additionally, a nunc pro tunc change of date is generally not recognized in the Ninth Circuit. In Pennington v. Guam, the Ninth Circuit specifically addressed retroactive conferral of jurisdiction. 228 F.2d 892 (9th Cir. 1955). In this case, the prosecution was based upon an information with any indictment by grand jury. The Ninth Circuit held that the district court lacked jurisdiction to try the case on information, and stated that the attempted amendment of a statute "cannot operate retroactively to confer a jurisdiction which the trial court lacked when appellant was convicted . . . ." Id. at 892-93.

As another example, in United States v. Yepez, 704 F.3d 1087, 1091 (9th Cir. 2012) (en banc), the Ninth Circuit declined to honor a state court ruling retroactively terminating a defendant's probation to an earlier date. In Yepez, each defendant convinced the relevant state court to terminate his probation nunc pro tunc as of the day before he committed his federal crime, in order to try to qualify for safety valve relief. Id. at 1089. The defendants argued that "their nunc pro tunc orders effectively changed history, so that they were no longer on state probation at

the time they committed their federal crimes and were, therefore, eligible for safety valve relief." Id. at 1089-90. The Ninth Circuit held that because the plain language of the Sentencing Guidelines looks to a defendant's status at the time he commits the federal crime, the fact that "a state court later deemed the probation terminated before the federal crime was committed can have no effect on a defendant's status at the moment he committed the federal crime." Id. at 1090.

Another example where the Ninth Circuit has rejected a nunc pro tunc change of date is United States v. Alba-Flores, 577 F.3d 1104, 1111 (9th Cir. 2009). In Alba-Flores, the Ninth Circuit held that when determining whether a federal defendant is under a criminal justice sentence, "[i]t is the actual situation at th[e] precise point in time" that the crime was committed and "not the situation at some earlier or later point that controls." Id. The Ninth Circuit in Alba-Flores held that the "state court order could not change th[e] concrete fact" that the defendant was under a state probation sentence at the time he committed his federal offense. Id.

When evaluating an attorney's bar status, the Ninth Circuit has looked at the attorney's status at the time services were rendered. Z.A. v. San Bruno Park Sch. Dist., 165 F.3d 1273, 1275 (9th Cir. 1999). The Ninth Circuit held that an individual who was not a member of the California State Bar at the time of state administrative proceedings was not eligible to be awarded attorneys' fees under the Individuals with Disabilities Education Act. The Ninth Circuit stated that "no person may recover compensation for services as an attorney in California unless he or she was a member of the state bar *at the time the services were rendered*." Id. at 1275 (emphasis added). Finally, the Ninth Circuit concluded with the following: "A person is or is not licensed to practice law in a particular forum. There is no halfway. If not licensed, one cannot practice in that forum . . . .' Id. at 1276.

The Government argues that Ms. Parks's active status was effective February 1, 2013. [Doc. No. 32, Govt.'s Opp. at 5.] The Government specifically contends that "[t]he Virginia State Bar did not 'nunc pro tunc' her membership to, in effect,

create a legal fiction regarding [Ms. Parks's] bar status; rather, the Virginia Bar merely corrected what amounted to a clerical error." [Id.]

The Court finds, however, that the Government's claims that Ms. Parks had active bar status on March 19 to be exactly that, a legal fiction. The Court cannot look to what the Virginia State Bar now says was Ms. Parks's bar status on March 19 for purposes of jurisdiction. Rather, under Supreme Court and Ninth Circuit precedent outlined above, the Court must consider what Ms. Parks's bar status was on March 19, at the time she obtained the indictment. Facts occurring after Ms. Parks obtained the indictment on March 19 cannot confer jurisdiction on this court if sufficient jurisdiction did not exist at the time the indictment was obtained. See Newman-Green, 490 U.S. at 830; Church of Scientology of Colorado, 499 F. Supp. at 1088. The fact that the Virginia State Bar at a later date deemed Ms. Parks to be an active member does not have an effect on Ms. Parks's bar status at the precise moment in time when she obtained the indictment.

The Court emphasizes that it is not second-guessing the Virginia State Bar's decision to backdate Ms. Parks's active bar status to February 1, 2013, which was the Government's concern at oral argument. The Virginia State Bar may use the February 1, 2013 admission date for their own purposes, such as to determine whether Ms. Parks should face disciplinary action for the unauthorized practice of law. However, for the narrow purpose of whether this Court had jurisdiction on March 19, 2013, the Court must consider Ms. Parks's bar status at that exact point in time.

Because Ms. Parks was not an active member of either the California or Virginia State Bars on March 19, 2013 when she obtained the indictment, she was not a proper representative of the Government. Therefore, the Court did not have jurisdiction when the indictment was obtained. Providence Journal Co., 485 U.S. at 708. Accordingly, the Court **GRANTS** Defendants' motion and **DISMISSES** the indictment against Defendants Andrade-Garcia and Gonzalez.

## B. Dismissal with Prejudice

Defendants also ask that the Court dismiss the indictment with prejudice due to prosecutorial misconduct.

"An indictment may be dismissed with prejudice under either of two theories: '[First, a] district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. [Second, i]f the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers.'" United States v. Chapman, 524 F.3d 1073, 1084 (9th Cir. 2008) (quoting United States v. Barrera-Moreno, 951 F.2d 1089, 1091 (9th Cir. 1991) (citations omitted)).

### 1. Due Process Violation

Federal courts addressing the issue have found that prosecution by an unlicensed attorney does not violate a defendant's due process rights. See Munoz v. Keane, 777 F. Supp. 282, 283-84 (S.D.N.Y. 1991), aff'd sub. nom., Linares v. Senkowski, 964 F.2d 1295 (2d Cir. 1992); see also Rogers v. United States, 2010 WL 3023303, at *8 (M.D.N.C. July 27, 2010); Hamilton v. Roehrich, 628 F. Supp. 2d 1033, 1054 (D. Minn. 2009). The Southern District of New York reasoned that "[w]hile it is obviously preferable that a prosecutor be licensed to practice law in the jurisdiction in which he or she practices, the fact that a prosecutor is not admitted does not necessarily undermine the fairness of the trial process." Munoz, 777 F. Supp. at 285. Noting that the Second Circuit had previously held that a criminal defendant must be represented by licensed counsel, the district court explained that "[w]hile a prosecutor is obligated to seek justice, not only a conviction, a criminal defendant does not rely on a prosecutor to protect his rights" and, "[a]s a result, the fact that a prosecutor may be unlicensed to practice law has far fewer repercussions for the defendant than if his own counsel is not admitted." Id. at 286. The court rejected the defendants' argument that a per se due process violation occurred when a prosecutor was unlicensed because, "[w]here, as here, defense counsel and an

impartial trial judge are capable of monitoring the prosecutor's conduct in order to ensure that no constitutional violations occur, it would be inappropriate to conclude that a due process violation automatically results from the prosecutor's unlicensed status." Id. The Court declines to recognize a constitutional right to be prosecuted by a licensed attorney. Accordingly, the Court finds that Defendants' due process rights were not violated.[4]

### 2. Supervisory Powers

"A district court may exercise its supervisory power 'to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct.'" Chapman, 524 F.3d at 1085 (quoting United States v. Simpson, 927 F.2d 1088, 1090 (9th Cir. 1991)). "Under its inherent supervisory powers, a federal court is empowered to dismiss an indictment on the basis of governmental misconduct. . . . As such, dismissal is used as a prophylactic tool for discouraging future deliberate governmental impropriety of a similar nature. . . ." United States v. Samango, 607 F.2d 877, 884 (9th Cir. 1979) (quoting United States v. Owen, 580 F.2d 365, 367 (9th Cir. 1978) (citations omitted)). "[T]he supervisory power may also be used 'to prevent parties from reaping benefit or incurring harm from violations of substantive or procedural rules (imposed by the Constitution or laws) governing matters apart from the trial itself.'" United States v. Ross, 372 F.3d 1097, 1009-1010 (9th Cir. 2004) (quoting United States v. Williams, 504 U.S. 36, 46 (1992)).

---

[4] The Court notes that failure to disclose Brady evidence constitutes a due process violation. Brady v. Maryland, 373 U.S. 83, 87 (1963). The Ninth Circuit has held that evidence that is material to the question of whether jurisdiction existed is subject to disclosure under Brady. Paradis v. Arave, 240 F.3d 1169, 1177-78 (9th Cir. 2001). In the present case, documents regarding Ms. Parks's bar status could be Brady material because her inactive status when she obtained the indictment deprives this Court of jurisdiction. However, Brady is a post-trial remedy, see United States v. Blackley, 986 F. Supp. 600, 607 (D.D.C. 1997), and the documents regarding Ms. Parks's bar status were disclosed to Defendants prior to trial. Accordingly, the Court finds that Defendants' due process rights were not violated due to the Government's initial failure to disclose documents pertaining to Ms. Parks's bar status for the purposes of dismissal with prejudice.

"To justify exercise of the court's supervisory powers, prosecutorial misconduct must (1) be flagrant and (2) cause 'substantial prejudice' to the defendant." Ross, 372 F.3d at 1110. "The District Court's role as an overseer of the grand jury is limited, and it 'may not exercise its "supervisory power" in a way which encroaches on the prerogatives of the (prosecutor and grand jury) unless there is a clear basis in fact and law for doing so." Samango, 607 F.2d at 881 (quoting United States v. Chanen, 549 F.2d 1306, 1309 (9th Cir. 1977)). "[B]ecause '[d]ismissing an indictment with prejudice encroaches on the prosecutor's charging authority,' this sanction may be permitted only 'in cases of flagrant prosecutorial misconduct.'" Chapman, 524 F.3d at 1085 (quoting Simpson, 927 F.2d at 1091). In fact, the Ninth Circuit has stated that although a district court's "power to dismiss an indictment on the grounds of prosecutorial misconduct is frequently discussed[, it is] rarely invoked." Samango, 607 F.3d at 881; see also United States v. Lopez, 4 F.3d 1455, 1464 (9th Cir. 1993) (stating that dismissal of an indictment is an "extreme remedy").

"[A]ccidental or merely negligent governmental conduct is insufficient to establish flagrant behavior." Chapman, 524 F.3d at 1085. However, "flagrant misbehavior" may include "reckless disregard for the prosecution's constitutional obligations." Id. "Dismissal with prejudice may also be appropriate when the dismissal results from the government's carelessness." United States v. Barraza-Lopez, 659 F.3d 1216, 1222 (9th Cir. 2011) (in the context of prosecutors dismissing charges without prejudice, and later refiling to restart the 30-day clock).

The Ninth Circuit has upheld the following district court findings of flagrant prosecutorial misconduct. In Samango, the Ninth Circuit affirmed the district court's dismissal of the indictment based on prosecutorial misconduct related to "improper influence and usurpation of the grand jury's role" when the prosecutor, *inter alia*, "merely deposited" lengthy transcripts with the grand jury with no indication in the record whether the jurors read them, did not warn the grand jury of

a witness's doubtful credibility, and did not apprise the grand jury that they could subpoena the witness's live testimony. Samango, 549 F.2d at 881-82. The Ninth Circuit held that "the manner in which the prosecution obtained the indictment represented a serious threat to the integrity of the judicial process, and that [t]he District Court's dismissal, therefore, was a proper exercise of its supervisory power." Id. at 885. In Chapman, the Ninth Circuit upheld the district court's finding that the Assistant U.S. Attorney acted "flagrantly, willfully, and in bad faith" when he "fail[ed] to produce documents [in compliance with Brady and Giglio] and to record what had or had not been disclosed, along with affirmative misrepresentations to the court of full compliance." Chapman, 524 F.3d at 1084-85.

In United States v. Kearns, on the other hand, the Ninth Circuit held that there was no flagrant prosecutorial misconduct. The Ninth Circuit focused on the fact that a police department's erroneous statements that there was no written agreement between an informant and the police department "appears to have . . . been due to incompetence and other non-invidious factors rather than to intentional deception." 5 F.3d 1251, 1254 (9th Cir. 1993).

The Court finds that the present case is more analogous to Kearns than it is to Samango or Chapman, as Ms. Parks's actions demonstrate carelessness and neglect rather than any malicious intent to improperly influence the grand jury. Although Ms. Parks was not forthcoming with the Court regarding her bar status, her actions regarding her lapsed bar status do not reflect bad faith, as evidenced in her letters to the Virginia State Bar. [Doc. No. 40-1, Ex. A, May 24 Letter from Parks at 44-45.] Furthermore, the Court is not aware of a history of unlicensed attorneys practicing before this Court from the U.S. Attorneys Office. The Court also recognizes that Ms. Parks and the U.S. Attorney's Office are entitled to challenge Defendants' arguments regarding her bar status by arguing in good faith that she became an active member on the Virginia State Bar on February 1, 2013, even if the Court did not ultimately accept her argument for jurisdictional purposes. Therefore, even

though there may have been prosecutorial misconduct, the Court finds that it does not rise to the level of being flagrant. Because the Court finds that there was no flagrant prosecutorial misconduct, the Court need not address whether Defendants were prejudiced. Accordingly, the Court declines to dismiss the indictments with prejudice.

Despite the Court's disinclination to dismiss the indictments with prejudice, the Court cautions Ms. Parks and the U.S. Attorney's Office to be more forthcoming in the future about potential issues regarding an attorney's bar status as soon as they arise, instead of acting only after problems are brought to the Court's attention by defense counsel. The Court acknowledges that the U.S. Attorneys Office and Ms. Parks were not forthcoming with providing documentation regarding Ms. Parks's bar status in Virginia, even though at least some of the documents were in Ms. Parks's possession. [Id. at 44.] In fact, the Court only obtained the correspondence between Ms. Parks and the Virginia State Bar through a subpoena of the Virginia State Bar. The Court also finds troubling that Mr. Robinson, when presented at oral argument with the documents obtained through subpoena, stated that he had never seen the correspondence between Ms. Parks and the Virginia State Bar.

Additionally, the Court notes, as it did during oral argument, that the U.S. Attorneys Office's accusations in its opposition brief that defense counsel were engaging in blackmail[5] and defamation[6] are antagonistic, unprofessional, and wholly

---

[5] The Government claims that a May 22, 2013 letter from defense counsel to Mr. William Cole, Chief of the Criminal Division of the U.S. Attorneys Office ("Mr. Cole") was an attempt to blackmail the U.S. Attorneys Office. [Doc. No. 32, Govt.'s Opp. at 4.] The letter alerted Mr. Cole to defense counsel's intention to file the motion to dismiss the indictment. They also stated: "We take no joy in publicly filing this motion which accuses an individual prosecutor of misconduct. We believe that Ms. Parks's actions warrant discipline, but would be willing to allow your office to handle the matter internally so long as we are able to resolve this case beneficially for our clients." [Doc. No. 32-1, Ex. A May 22 Letter from Kimpel and Sullivan at 2.] Defense counsel contends that this email was sent to the Government in the context of plea negotiations. [Doc. No. 34-1, Def.'s Reply at 8-9.] The Court finds that the letter from defense counsel is in no way an attempt to blackmail the U.S. Attorneys Office.

[6] The Government states that Ms. Sullivan sent attorney Knut Johnson ("Mr. Johnson") an email on May 27, 2013 where she allegedly stated that Ms. Parks practiced law without a license. [Doc. No. 32, Govt.'s Opp. at 32.] The Government contends that Mr. Johnson forwarded the email

inappropriate. Defense counsel had every right to engage in plea negotiations and raise arguments regarding Ms. Parks's bar status on behalf of their clients.

Finally, although Ms. Parks in her letter to the Virginia State Bar states that she "take[s] her responsibility to maintain an active bar status seriously," her actions reflect the contrary. [Doc. No. 40-1, Ex. A, May 24 Letter from Parks.] The Court reminds Ms. Parks of her ethical duties as an officer of the court, and cautions Ms. Parks to be more candid with the Court in the future. Ms. Parks should have acted immediately upon receiving notice from the Virginia State Bar that she was not an active member. Ms. Parks also should have immediately notified the Court. The Court reminds Ms. Parks and the U.S. Attorneys Office that the ethical duties of not engaging in the unauthorized practice of law apply in full force to them, as they do to all attorneys.

## **CONCLUSION**

In light of the foregoing, the Court **GRANTS** Defendant Gonzalez's motion and dismisses the indictment for lack of jurisdiction. The Court also **GRANTS** Defendant Garcia-Andrade's motion to join Defendant Gonzalez's motion. The Court declines to dismiss with prejudice. However, the Court **DISMISSES** the indictment as to both Defendants Gonzalez and Garcia-Andrade **without prejudice**.

**IT IS SO ORDERED.**

**DATED:** August 6, 2013

**IRMA E. GONZALEZ**
**United States District Judge**

---

to "the panel." [Id.] In a declaration, Mr. Johnson stated that he believes the Government is referring to a confidential email he sent to the CJA Panel of Attorneys. [Doc. No. 34-2, Johnson Decl. at 2.] Defendants argue that the email was sent for the purpose of notifying other attorneys "of a potential litigation if they had a corresponding indictment." [Doc. No. 34-1, Def.'s Reply at 9.] The Government's accusations of defamation are conclusory and baseless. Furthermore, because this email is not relevant to the issues before the Court, the Court **GRANTS** Defendants' requests to strike any references to Mr. Johnson. [Doc. No. 34, Def.'s Reply; Doc. No. 40, Def.'s Supp. Reply.]